IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VIKTOR MAZELIAH, | CIV. NO. 26-00053 JAO-WRP |
| Petitioner, | ORDER DISMISSING EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| MICHAEL J.D. SMITH, ET AL., | |
| Respondents. | |

**ORDER DISMISSING EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Viktor Mazeliah ("Petitioner") is an Israeli national who was ordered removed in absentia ("Removal Order") by an Immigration Judge ("IJ"). He filed a motion to reconsider the Removal Order and appealed the IJ's denial of it to the Board of Immigration Appeals ("BIA"). That appeal remains pending. Petitioner also claims he has an appeal from an order denying a motion to reopen pending before the BIA.

Petitioner was detained on January 27, 2026, purportedly in order to effectuate the Removal Order. He filed an Emergency Petition for Writ of Habeas Corpus before this Court ("Writ Petition"), ECF No. 1, and an Emergency Motion for Temporary Restraining Order ("Second TRO"), ECF No. 7, asking to stay his

removal while the BIA considers his appeal(s), and to enjoin Respondents[1] from transferring him to another detention center while his BIA appeal is pending.  *See* ECF No. 7 at 2.  He also filed a Motion to Vacate the IJ's Removal Order.  *See* ECF No. 35.  For the following reasons, the Court DISMISSES the Writ Petition without prejudice because it does not have jurisdiction over this matter.[2]  It thus DENIES the other pending motions as moot.

## I.   BACKGROUND

### A.   Procedural History before USCIS, the Immigration Court, and the BIA

The procedural posture of this case is somewhat convoluted.  Here are the facts, as best as the Court can discern:

#### 1.   The I-751 Forms

---

[1] Respondents—whom Petitioner sues in their official capacities—are:  Michael J.D. Smith, Warden, Federal Detention Center Honolulu ("FDC"); Polly Kaiser, Acting Field office Director, San Francisco Field Office, Immigration and Customs Enforcement ("ICE"); Pamela Bondi, United States Attorney General; Kristy Noem, Secretary of the Department of Homeland Security ("DHS"); and Jayci Roney, United States Citizen and Immigration Services ("USCIS") Honolulu Field Officer Director.

[2] "In our adversarial system of adjudication, [courts] follow the principle of party presentation," and must generally not "look[] for wrongs to right."  *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (citations omitted).  The Court has attempted to adhere to that principle and takes no position on whether Petitioner may have any valid claims that he does not raise here.

Petitioner initially entered the United States on a tourist visa in March 2010. *See* ECF No. 7 at 2–3; ECF No. 34-1 ¶ 7.  On September 1, 2013, Petitioner married a United States citizen, and in August of the following year he obtained his conditional permanent resident status.  *See* ECF No. 18 at 16, 19; ECF No. 34-1 ¶ 8.  On June 22, 2016, he and his then-wife filed a joint I-751 form, which, if granted, would have lifted the conditions on Petitioner's permanent resident status. *See id.*; ECF No. 34-1 ¶ 9; USCIS, I-751 Petition to Remove Conditions on Residence (available at https://perma.cc/Y8JX-RKRN).  Approximately two years later, Petitioner and his wife divorced.  *See* ECF No. 18 at 19.

On April 1, 2021, USCIS denied Petitioner's joint I-751 because he failed to appear for an interview.  *See* ECF No. 7 at 26; ECF No. 34-1 ¶ 10.  Then, on May 5, 2021, DHS filed a Notice to Appear ("NTA") in the Immigration Court on May 19, 2021, placing Petitioner in removal proceedings, and served Petitioner via regular mail.  *See* ECF No. 7 at 26–27; ECF No. 34-1 ¶ 11.

At a master calendar hearing on July 28, 2021, Petitioner sought Immigration Court review of the joint I-751 denial and challenged the NTA.  *See* ECF No. 1 at 8; ECF No. 34-1 ¶ 15.

On March 3, 2022, Petitioner filed a second Form I-751, this time with a "request for waiver on the grounds of divorce" ("I-751 waiver petition").  ECF No. 7 at 31; *see* ECF No. 34-1 ¶ 17.  On July 26, 2023, DHS informed the IJ that that I-

751 waiver petition was still pending at USCIS.  *See* ECF No. 1 at 9.  The IJ set an individual hearing for January 17, 2025.  *See id.*; ECF No. 34-1 ¶ 24.

### 2.   The In Absentia Removal Order and Motion to Reconsider

Neither Petitioner nor his counsel (who is also counsel in this matter) showed up for the January 17, 2025 hearing.[3]  *See* ECF No. 34-1 ¶ 26.  As such, the IJ ordered Petitioner's removal in absentia to Israel.  *See* ECF No. 1-2.  In the Removal Order, the IJ determined that Petitioner's failure to appear at the removal hearing "constitute[d] an abandonment of any pending applications for relief or protection from removal and of any applications the respondent may have been eligible to file."  *Id*. at 1.  At that time, the I-751 waiver petition was still pending.

On February 6, 2025, Petitioner filed a motion to reconsider, arguing that the IJ didn't have jurisdiction over the "defunct" joint I-751, i.e., the first I-751, and requesting that the IJ rescind the Removal Order and reopen the case.  *See* ECF No. 1 at 11; ECF No. 34-1 ¶ 27.  Petitioner's basic argument is that the IJ lacked authority to enter a removal order based on the joint I-751 petition because the joint I-751 petition was "revoked" upon the termination of Petitioner's marriage, and that the filing of the alternative I-751 waiver divested the IJ of jurisdiction to

---

[3]  Counsel states that the failure to appear was "because of an unintended clerical scheduling inadvertent oversight" and further blames "the effects of Covid as it impacted the orderly process of the practice of law."  ECF No. 1 at 9.

review the denial of the joint I-751 petition.  *See* ECF No. 1 at 36–37; ECF No. 40-2 at 18–20.  The IJ denied the motion to reconsider on February 10, 2025.[4]  *See* ECF No. 1 at 11; ECF No. 34-1 ¶ 28.  Petitioner appealed that decision to the BIA the following day.  *See* ECF No. 18 at 20; ECF No. 34-1 ¶ 28.  On February 11, 2025, Petitioner also filed an emergency motion for stay of removal, ECF No. 34-1 ¶ 30, which the IJ denied on February 20 because Petitioner had not established that he was at risk of imminent removal, *id.* ¶ 34.  Petitioner filed a separate motion for stay of removal with the BIA on March 4, 2025.  *Id.* ¶ 35.

### 3.    The Motion to Reopen

Almost a week after the IJ denied Petitioner's motion to reconsider, on February 16, 2025, Petitioner also attempted to file a motion to reopen.  *See* ECF Nos. 34-2, 34-3; *see also* ECF No. 34-1 ¶ 32.   The immigration court issued two notices rejecting the filing because of "Incorrect Filing Location (Case at BIA)."  *See* ECF Nos. 34-2, 34-3; *see also* ECF No. 34-1 ¶ 32.  However, the same day as those notices of rejected filing, the immigration court also forwarded the Record of

---

[4] In denying Petitioner's motion to reconsider, the IJ commented:  "[t]he argument advanced appears to address whether the matter was or was not ripe for a hearing before [this] Court.  This argument does not excuse the [Petitioner] from his requirement to attend a scheduled hearing.  It is unclear whether the [Petitioner] would continue to fail to appear for future hearings as well.  As such, the [Petitioner's] motion to Reconsider is denied."  ECF No. 40-2 at 14.

Proceeding to the BIA for consideration of the "Appeal of Immigration Judge decision on a motion to reopen."  *See* ECF No. 34-1 ¶ 33; ECF No. 34-4.

### 4.    USCIS Denial of the I-751 Waiver Petition

On January 23, 2026, USCIS issued a decision regarding Petitioner's I-751 waiver petition:

> As of the date of the removal order, your conditional permanent resident status (CPR) was terminated, so there is no basis from which to seek removal of conditions on the permanent residence. . . . [A]n order becomes final immediately if an Immigration Judge orders removal *in absentia*. In this case, the order was dated January 17, 2025. In addition, per 8 C.F.R. § 1003.23(b)(4)(ii), the filing of (a first) motion to reopen an *in absentia* order stays removal pending disposition on the motion of the Immigration Judge. Accordingly, the order was automatically stayed upon the filing of the motion to reopen with the Immigration Judge. On February 10, 2025, the Immigration Judge denied the motion to reopen. As a result, the automatic stay lifted that date, which was before Form I-751 was denied on February 26, 2025.[5] Because the Immigration Judge has entered an order of removal against you and that order is now final, USCIS is denying your Form I-751.

ECF No. 18 at 16–17.

### 5.    Petitioner's Arrest and Subsequent Filings

On January 27, 2026, ICE arrested Petitioner based on the Removal Order. *See* ECF No. 34-1 ¶ 36; ECF No. 7 at 37.  Petitioner filed an Emergency Request

---

[5]  The Court suspects that the mention of February 26, 2025 is a mistake because it has not seen that date anywhere in the record.

to Stay Removal with ICE, dated February 5, 2026.  *See* ECF No. 7 at 37.  In it, he argued that his March 2022 I-751 waiver petition was filed "*nearly three (3) years prior to his in absentia removal order.*  The regulations state that 'a conditional resident who is in . . . removal proceedings may apply for the waiver only until such time as there is an order of removal,' 8 C.F.R. § 216.5(a)(2)."  ECF No. 7 at 37–38 (emphasis in original).  He argued to ICE that the IJ was therefore required to continue his removal proceedings until USCIS could address his I-751 waiver petition, citing to 8 C.F.R. § 216.5(f).  *Id*. at 38.  He further contended that at the time of the January 17, 2025 Removal Order, the NTA was flawed because his I-751 waiver petition was still pending.  *See id*.

On February 5, 2026, Petitioner also filed with the BIA a motion to remand to the IJ.  *See* ECF No. 34-1 ¶ 38.  Petitioner then filed with the BIA a motion to rescind the IJ's Removal Order on February 16.  *Id*. ¶ 40.  On February 17, 2026, the BIA denied Petitioner's March 4, 2025 request for a stay of removal.  *See id*. ¶ 41.  In it, the BIA noted that the Petitioner had requested the stay of removal based on the pending "appeal of the Immigration Judge's denial of the motion to reopen."  *See* ECF No. 28 at 11.

## B.    Procedural History Here

This case commenced on February 4, 2026 with the Writ Petition.  ECF No 1.  In it, Petitioner seeks:  (1) an emergency writ of habeas corpus pursuant to 28

U.S.C. § 2241; (2) a TRO staying his removal pending his BIA appeal; (3) a finding that the IJ did not have jurisdiction over the I-751 waiver; and (4) an order restricting Respondents from transferring him to another detention center while his BIA appeal is pending. *See id.* The next day, the Court refused to grant a TRO on an emergency *ex parte* basis. *See* ECF No. 6. It further directed Petitioner to serve Respondents and to file proofs of service, indicating that it would set a status conference once service was effectuated. *See id.*

Four days later, after failing to file any proof of service, and before requesting summonses, Petitioner filed his Second TRO Motion. *See* ECF No. 7. In it, he again requested that the Court: (1) issue an ex parte TRO staying his removal pending his BIA appeal; and (2) order Respondents not to transfer him to another detention facility while his BIA appeal is pending. *See id.*

The Court set a status conference for February 11, 2026, and preliminarily outlined several questions primarily related to its jurisdiction. *See* ECF No. 14. The Court also directed the Clerk's Office to email the Second TRO Motion to the U.S. Attorney's Office as a courtesy, making clear that it did not consider such an email to amount to service. *See id.*

At the February 11, 2026 status conference, Assistant United States Attorney Edric Ching appeared on behalf of all Respondents, and accepted service for all of them via the Clerk's Office's email. *See* ECF No. 17. The Court ordered briefing

8

on the question of jurisdiction and set a further status conference for the following day. *See id.*

Counsel filed their briefs. *See* ECF Nos. 18, 19. At the February 12, 2026 hearing, AUSA Ching reported that he directed Respondents not to remove Petitioner until after this Court could rule on its jurisdiction and the Second TRO Motion. *See* ECF No. 21. As the Court stated at the hearing, it appreciates AUSA Ching's professionalism in doing so and in accepting service.

Since then, Petitioner sought leave to allow further briefing, ECF No. 23, which the Court granted and directed Respondents to file a supplemental brief as well, ECF No. 24. The parties thereafter filed their supplemental briefs. *See* ECF Nos. 28, 29. After reviewing those briefs, the Court ordered a formal response to the Writ Petition, and directed Respondents to provide more details on Petitioner's immigration proceedings. *See* ECF No. 32. Respondents filed their answer and attached a supporting declaration with exhibits. *See* ECF No. 34. Petitioner then filed his Motion to Vacate the Removal Order, in which he argues that the Court should vacate the IJ's order pursuant to Federal Rule of Procedure 60 or the Administrative Procedures Act. *See generally* ECF No. 35. Petitioner also filed his reply in support of the Writ Petition. ECF No. 36.

After reviewing that volley of briefing, the Court again asked for more specific detail concerning Petitioner's immigration proceedings. As the Court

stated, it still lacked sufficient information to determine whether the Removal Order is a final order of removal at this time. *See* ECF No. 38. Respondents submitted additional evidence regarding the status of the Removal Order, ECF No. 40, and then unprompted offered to contact the BIA to try to obtain information in writing about what matters it believed it had pending, ECF No. 43. The BIA declined to provide such information, ECF No. 46 at 3, but an attorney advisor reinforced Respondents' position that Petitioner did not have a motion to reopen pending before the BIA, *see* ECF No. 46-5 at 1. Petitioner also filed a Status Report in which he disputed the conclusion that there is no motion to reopen pending, and attached declarations and letters in support of Petitioner. *See* ECF No. 47.

## II. LEGAL STANDARDS

### A. Temporary Restraining Orders

The standards for obtaining a TRO are the same as they are for a preliminary injunction, *see Whitman v. Hawaiian Tug & Barge Corp./Young Bros., Ltd. Salaried Pension Plan*, 27 F.Supp.2d 1225, 1227 (D. Haw. Nov. 25, 1998), and address: (1) the likelihood of success on the merits; (2) whether the petitioner is likely to suffer irreparable harm without preliminary relief; (3) whether the balance of equities tip in the petitioner's favor; and (4) whether an injunction is in the public's interest. *See Winter v. Natural Resources Defense Council, Inc.*, 55 U.S.

7, 20 (2008).  But meeting those requirements doesn't confer jurisdiction on federal courts:  contrary to what Petitioner has argued at the hearings before the Court, this Court doesn't have jurisdiction over this matter pursuant to Fed. R. Civ. P. 65.  *See Kamau v. Ertifai*, 2025 WL 2373718 at *3 (D. Ariz. August 14, 2025) ("The sole basis Kamau provides for this Court's jurisdiction is Rule 65, but none of the Federal Rules of Civil Procedure confer subject matter jurisdiction."); *see also* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts[.]");

## B.    Writs of Habeas Corpus

"The writ of habeas corpus is a procedural device for subjecting executive, judicial, or private restraints on liberty to judicial scrutiny.  Where it is available, it assures among other things that a prisoner may require his jailer to justify the detention under the law."  *Peyton v. Rowe*, 391 U.S. 54, 58 (1968) (footnotes omitted).  "Writs of habeas corpus may be granted by . . . the district courts[.]"  28 U.S.C. § 2241.  "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  28 U.S.C. § 2243.  The habeas petitioner bears the burden of establishing

entitlement to the writ.  *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009); *see also Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004).

### III.  DISCUSSION

Petitioner asks this Court to do many things, and specifically seeks:

(1) A writ of habeas corpus, releasing him from custody, *see* ECF No. 1 (Writ Petition) at 33;

(2) A stay of his removal pending his BIA proceedings, *see id.* at 35; ECF No. 7 (Second TRO Motion) at 2;

(3) A TRO enjoining Respondents from transferring him to another detention center while his BIA proceedings are pending, *see* ECF No. 1 at 35;

(4) An order declaring that his original joint I-751 petition was "legally revoked" when he filed his I-751 waiver petition, *see id.* at 36;

(5) An order declaring "[t]hat the IJ had no jurisdiction" over the I-751 waiver petition "as of January 17, 2025, as it was still pending at the USCIS level[,]" *id.*;

(6) An order essentially reversing the IJ's order of removal because "the IJ should have dismissed the case[,]" *id.*; and

(7) A "finding that the January 23, 2026 USCIS Decision is in direct conflict

with USCIS's own policy manual, federal code of regulations, and case

precedence," *id*. at 37.

The Court views these requests as collectively falling into four categories—

(1) a motion to stay Petitioner's removal pending the outcome of the BIA

proceedings; (2) a request for an order declaring the IJ lacked jurisdiction to enter

the order of removal; (3) a motion to enjoin Respondents from transferring

Petitioner to another detention facility; and a (4) petition for a writ releasing him

from custody.  The Court takes each in turn, but begins with the statutory

jurisdictional scheme.

## A.   District Courts' Jurisdiction over Immigration Cases in General

Title 8, United States Code, Section 1252 restricts jurisdiction over

immigration matters in several ways.  Significant here, Section 1252(a)(5) limits

review of removal orders to the courts of appeals:

> Notwithstanding any other provisions of law . . . including
> section 2241 of Title 28, . . . a petition for review filed with an
> appropriate court of appeals in accordance with this section shall
> be the sole and exclusive means for judicial review of an order
> of removal entered or issued under any provision of this chapter,
> except as provided in subsection (e).[6]

8 U.S.C. § 1252(a)(5).

---

[6] Subsection (e) addresses habeas proceedings under 8 U.S.C. § 1225(b)(1).

13

Section 1252(b)(9) further limits District Courts' jurisdiction:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*See* 8 U.S.C. § 1252(b)(9).  Section 1252(b)(9) channels certain challenges to the Courts of Appeals via petitions for review of final orders of removal.  "The Supreme Court has thus characterized § 1252(b)(9) as a zipper clause, explaining that the statute's purpose is to consolidate judicial review of immigration proceedings into one action in the court of appeals."  *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (internal quotation marks and citations omitted).  The statute does not channel *all* challenges related to immigration proceedings, however—only those "arising from any action taken or proceeding brought to remove an alien."  *Id.* at 1032 (quoting 8 U.S.C. § 1252(b)(9)).

Finally, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence proceedings, adjudicate cases, or execute removal orders* against any alien under this chapter."  8 U.S.C. § 1252(g) (emphasis added).

14

The Supreme Court has interpreted § 1252(g) "narrowly" to apply only to the three discrete actions listed: commencing proceedings, adjudicating cases, and executing removal orders. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). The Court explained that "[t]here was good reason for Congress to focus special attention upon" these actions because they "represent the initiation or prosecution of various stages in the deportation process," where the immigration agency enjoys discretion. *See id.* at 483–87. By contrast, the Court noted that § 1252(g) would not bar challenges to "many other decisions . . . such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id.* at 482. In short, "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion. It does not tax the imagination to understand why it focuses upon the stages of administration where those attempts have occurred." *Id.* at 485 n.9.

## B. Finality of the IJ's Removal Order

Since the start of this case, the Court has been asking whether the in absentia Removal Order is a final order of removal as the answer to that question influences the scope of the Court's jurisdiction. In a nutshell, if the Removal Order is final,

this Court likely lacks jurisdiction to enter the relief Petitioner seeks.  Conversely, if the Removal Order is not administratively final, the INA's jurisdiction stripping provisions likely wouldn't apply.  As such, before analyzing whether it has jurisdiction, the Court must first assess the finality of the Removal Order.  But receiving a straight and satisfactory answer to what seems like a simple question has proven difficult based on Respondents' shifting and vague responses, and Plaintiff's seeming lack of understanding about the Court's jurisdictional analysis.

Eventually, after several rounds of briefing, it became clear that the finality of the Removal Order depended on whether Petitioner had timely moved to reopen proceedings and whether the denial of any motion to reopen remains pending with the BIA.  Because Petitioner never properly and timely *filed* a motion to reopen, the Removal Order is final under binding Ninth Circuit precedent.

### 1.      The Evidence and the Parties' Positions

Respondents initially asserted that the Removal Order was final immediately upon entry pursuant to 8 C.F.R. § 1241.1(e), which states that "[a]n order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final . . . [i]f an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order[.]"  *See* ECF No. 19 at 7.  Petitioner responded that the Ninth Circuit has provided a different definition of finality and that in absentia orders become final upon either

(1) the BIA's affirmance of a denial of a timely-filed motion to reopen, or (2) if the person does not file a motion to reopen, after the 180-day deadline to do so passes. *See* ECF No. 28 at 3–4 (citing *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021); *Bonilla v. Hermosillo*, 2025 WL 3237854, at *2 (W.D. Wash. Nov. 19, 2025)).

Respondents then changed their tune and argued that the Removal Order was final because Petitioner had filed a motion to *reconsider* rather than a motion to reopen with the IJ. *See* ECF No. 29 at 3–5. Attached to that filing, Respondents submitted a declaration from a Deportation Officer, attesting that Petitioner filed a motion to reconsider on February 6, 2025, which the IJ denied on February 10. *See* ECF No. 29-1 ¶¶ 14–15. But that declaration didn't provide the whole picture and ignored that Petitioner had already submitted evidence suggesting that the BIA might also be considering a motion to reopen. *See* ECF No. 18 at 17 (agency order denying I-751 waiver petition and noting that the IJ denied a motion to *reopen* on February 10, 2025); ECF No. 28 at 11 (BIA denial of stay of removal pending appeal of "denial of the motion to reopen").

In fairness, Petitioner has also presented contradictory evidence and argument about his immigration proceedings. For example, in his February 12, 2026 filing with the Court, he argued that the IJ had never decided the motion to reopen, but instead had rejected it for filing. *See* ECF No. 18 at 12. By contrast,

17

just a week later, and again on March 10, 2026, he asserted that a motion to reopen was still pending with the BIA. *See* ECF No. 28 at 3; ECF No. 36 at 2.

Faced with this ambiguous record, the Court directed Respondents to "provide more detail regarding Petitioner's immigration proceedings, with particular emphasis on the precise nature of Petitioner's challenges to the immigration judge's in absentia removal order," and to address evidence that Petitioner had filed a motion to reopen. *See* ECF No. 32. Respondents this time acknowledged that Petitioner had attempted to file at least one motion to reopen but argued that the immigration court had rejected it for filing, and that the 180-day deadline to file had now passed, rendering the Removal Order final pursuant to *Cui*. *See* ECF No. 34 at 12–13. Respondents again submitted a declaration from the Deportation Officer, this time with three exhibits attached. *See* ECF Nos. 34-1, 34-2, 34-3, 34-4. The declaration states that the immigration court provided Petitioner two notices that it had rejected filings. *See* ECF No. 34-1 ¶ 32. Those notices demonstrate that Petitioner had attempted to file a motion to reopen on February 16, 2025—after Petitioner had filed his motion to reconsider and appealed the IJ's denial of that motion—but that they were rejected based on "Incorrect Filing Location (Case at BIA)." *See* ECF Nos. 34-2, 34-3. Confusingly, though, that same day the Immigration Court also issued a notice stating that the record of proceeding was forwarded to the BIA for consideration of

the "Appeal of the Immigration Judge decision on a motion to reopen"

("Transmittal Notice").  ECF No. 34-1 ¶ 33; ECF No. 34-4.  Neither Respondents'

brief nor Deportation Officer's declaration tried to explain this apparent

inconsistency.

In his reply, Petitioner's counsel filed a declaration in which he states he

called the BIA to "track" the motion to reopen.  *See* ECF No. 36 at 11.  One file

clerk stated that the following was pending before the BIA:  the appeal of the IJ's

denial of the motion to reconsider, the motion to remand to immigration court, and

the motion to rescind the in absentia Removal Order.  *See id.* at 12.  Petitioner's

counsel was then transferred to another person at the BIA who told him that the

motion to reopen "is part of the record on appeal" at the BIA.  *See id.* at 12.

Based on the contradicting evidence, the Court again ordered Respondents to

provide more information.  *See* ECF No. 38 (citing contradictory evidence).  This

time the Court directed Respondents "to submit documentary evidence of what

precisely is pending before the BIA at this time."  *See id.*  The documentary

evidence they filed includes the BIA docket, the notice of appeal to the BIA, and

much of the briefing the parties provided to the BIA.  *See* ECF No. 40.

Respondents assert that the immigration court's Transmittal Notice is "not

referenced in the BIA docket."  *Id.* at 3.

In response to the documentary evidence, Petitioner filed a copy of the motion to reopen that the IJ had rejected for filing. *See* ECF No. 42-1. He also claims that the Transmittal Notice is available on the BIA docket "by clicking on the February 18, 2025 entry labeled as 'Case Notice[.]'" ECF No. 42.

## 2. Analysis

As alluded to above, the precise status of Petitioner's purported motions to reopen dictate the finality of the in absentia Removal order. Both sides recognize that *Cui* provides guidance but differ in their interpretations of how the case relates to Petitioner's situation. Because the complicated procedural history at issue in *Cui* is similar to that here, the Court discusses the case in detail

In *Cui*, the Ninth Circuit addressed the finality of an IJ's in absentia removal order. The petitioner in that case, Cui, overstayed her visa and was put into removal proceedings. *See Cui*, 13 F.4th at 994. When she and her counsel failed to appear at the merits hearing, the IJ entered an in absentia removal order on March 4, 2014. *See id.* Within a month, Cui's counsel filed an *appeal* of the IJ's order to the BIA. *See id.* And then nearly three months later, Cui's counsel also tried to file a motion to reopen with the IJ. *See id.* "The immigration court clerk rejected, and did not file, the motion to reopen on August 19, 2014," in part because of the pending BIA appeal. *See id.* Cui's counsel then filed a motion to remand with the BIA, but the BIA did not rule on the motion for over a year. *See*

20

*id.* Instead of remanding, "the BIA returned . . . Cui's case to the immigration court, noting that a motion to reopen before the IJ was the appropriate route to seek reconsideration of an in absentia removal order in Cui's circumstances." *Id.*

Eventually in late-2016, more than two years after first trying to file a motion to reopen, Cui's counsel filed such a motion with the IJ. *See id.* at 995. The IJ denied the motion as untimely, and the BIA dismissed the appeal. *See id.* Cui then filed with the Ninth Circuit a petition for review of the BIA's dismissal of the IJ's 2016 denial of the motion to reopen.

Before the Ninth Circuit, Cui argued that the in absentia removal order was not final because she'd timely filed a motion to reopen. *See id*. at 996. Rejecting this attack, the Ninth Circuit explained that a "removal order becomes final upon the earlier of (i) a determination by the BIA affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the BIA." *Id.* (citations, quotations, and alterations omitted). For in absentia removal orders, because they are not subject to direct appeal to the BIA, people challenging them must file "a motion to reopen the order before the IJ within 180

21

days of the order." *See id.* (citing 8 U.S.C. § 1229a(b)(5)(C)(i)[7]). If a person timely files a motion to reopen, they may seek BIA review of the denial, but "if the petitioner does *not* timely file such a motion before the IJ the order becomes final at the end of the 180-day period." *See id.*

As to Cui's case, the Ninth Circuit concluded that her in absentia removal order was final at the end of the 180-day period because Cui didn't properly file a motion before the deadline. *See id.* Instead, the immigration court clerk rejected the attempt to file a motion to reopen, as evidenced by "a notice rejecting the attempted filing of the 2014 motion, which was mailed to Cui's counsel with fourteen days left before the 180-day window to challenge the in absentia order closed." *See id.* at 997. At that point, Cui's counsel should have withdrawn the wrongfully filed direct appeal to the BIA and re-filed the motion to reopen within the remaining time. *See id.* at 998. But counsel took no action, so the Ninth Circuit concluded that Cui "did not properly file a motion to reopen within the statutory timeline." *See id.* Her in absentia removal order thereby became final 180 days after the IJ issued it.

---

[7] The statute provides that an in absentia removal order "may be rescinded only -- (i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances . . . or (ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice[.]" 8 U.S.C. § 1229a(b)(5)(C)(i).

By contrast, when a person seeking review of an in absentia removal order timely and properly files a motion to reopen, the order is not final until the BIA completes its review. For example, in one recent district court case a person moved for a temporary restraining order to prevent his removal from the United States pending BIA proceedings. *See Bonilla v. Hermosillo*, 2025 WL 3237854 (W.D. Wash. Nov. 19, 2025). The district court concluded that the petitioner's in absentia order was not a final order of removal according to *Cui* because the petitioner had timely filed a motion to reopen with the IJ, then timely filed an appeal of the IJ's denial of that motion, and the BIA appeal remained pending. *See id.* at *3. There, as here, the question of whether the removal order was final affected the district court's jurisdiction over the habeas petition. *See id.*

Turning to the instant case, the documentary evidence submitted demonstrates that Petitioner never properly filed a motion to reopen and that the only appeal pending before the BIA is of the IJ's denial of Petitioner's motion to reconsider. Indeed, the BIA docket reveals only one appeal: the February 11, 2025 appeal of the IJ's denial of Petitioner's motion to reconsider.[8] *See* ECF No. 40-1 at 2. The notice to appeal further specifies that Petitioner "appeals the Order of the Immigration Judge entered on 2/10/2025 denying [Petitioner's] Motion for

---

[8] And there's no dispute that Petitioner attempted to file a motion to reopen *after* February 11, 2026—the date of the only appeal on the docket.

Reconsideration, in which [Petitioner] argued that the IJ had no jurisdiction to issue an in absentia order." *See* ECF No. 40-2 at 6.

In fact, in his briefing to the BIA, Petitioner acknowledges the validity of the two rejected filing notices he received:

> On February 18, 2025 the IJ rejected Respondent's motion to reopen. Instead of ruling on the motion to reopen, the Immigration Court forwarded the motion to reopen to the BIA with a transmittal notice which read that the Immigration Court no longer had jurisdiction over the motion to reopen since Respondent had appealed the [motion to reconsider] to the BIA.

ECF No. 40-3 at 15. Respondents emphasized the rejected filings in their briefing, commenting that Petitioner "did not file a motion to reopen arguing that he failed to receive notice or that his failure to appear was because of exceptional circumstances." ECF No. 40-4 at 8. Both Petitioner's and Respondent's briefs to the BIA were filed well before the 180-day period to file a motion to reopen had expired.

Almost a year later, Petitioner again argued—in his motion to the BIA to rescind the Removal Order—that the IJ never adjudicated the motion to reopen. *See* ECF No. 40-7 at 5, 12. In opposition to the motion to rescind, Respondents repeated that Petitioner "did not file a motion to reopen based on exceptional circumstances within 180 days of his in absentia order of removal." *See* ECF No. 40-9 at 8. They asserted that the motion to reopen did not exist in the electronic record and that the EOIR Policy Manual provides that "the term 'rejected' means

24

that the filing is returned to the filing party because it is defective and therefore will not be considered by the IJ. It is not an adjudication of the filing or a decision regarding its content." *Id.* (quoting EOIR Policy Manual, Part II, Chapter 2.1(d)(1)).

Here, the bulk of the evidence ultimately persuades the Court that, like in *Cui*, Petitioner attempted to file a motion to reopen but never succeeded within the 180-day period. And none of the conflicting evidence convinces the Court otherwise. The strongest evidence to the contrary is the ambiguous Transmittal Notice, which itself somewhat contradicts the notices of rejected filings. But Petitioner understood that the immigration court rejected his filing rather than adjudicate it. Further, while Petitioner argues that the Transmittal Notice is available on the BIA docket, the Court reviewed the docket and sees neither a "Case Notice" entry, nor any filing on February 18, 2025. Petitioner later clarified that the Transmittal Notice appears on the immigration court—not the BIA—docket. *See* ECF No. 47 at 6–7. In any event, Petitioner's briefing to the BIA makes clear that he was not initially arguing that he failed to appear based on the requisite "exceptional circumstances" for reopening, but instead was focused on challenging the IJ's jurisdiction to enter the in absentia Removal Order. *See generally* ECF No. 40-2. He was always briefing the appeal of the motion to reconsider rather than addressing the standard for a motion to reopen.

25

Petitioner's counsel's declaration that someone at the BIA told him that the motion to reopen was part of the record on appeal also doesn't carry much weight. Even assuming it's true that the motion is part of the record, that doesn't establish that Petitioner properly and timely filed the motion, thereby rendering the in absentia Removal Order non-final. USCIS's reference to the IJ denying a motion to reopen on February 10, 2025 likewise doesn't mean that the motion to reopen remains pending. In fact, Petitioner recognized that USCIS simply made a mistake about the name of the motion the IJ denied because it's undisputed that the IJ did *not* adjudicate the motion to reopen, and that the IJ instead denied the motion to reconsider on that date. *See* ECF No. 40-7 at 12; ECF No. 40-2 at 14 (denial of motion to reconsider).

To summarize, the IJ entered the Removal Order on January 17, 2025. Petitioner had 180 days from that point to file a motion to reopen to challenge the Removal Order. But Petitioner initially filed a motion to reconsider, which the IJ denied, and Petitioner immediately appealed that decision to the BIA. While that appeal was pending, Petitioner attempted to file a motion to reopen, but the immigration court rejected the filing because jurisdiction had been transferred to the BIA. After the rejected filing, there's no suggestion that Petitioner tried to file another motion to reopen, let alone that he succeeded in doing so. Thus, in all relevant aspects *Cui* is identical and dictates that the Removal Order became final

on July 16, 2025, 180 days after it was entered.[9]  With that, the Court turns to the

jurisdictional implications of its conclusion.

## C.  Request to Stay Removal Pending BIA Appeal

Because Petitioner's Removal Order is final, 8 U.S.C. § 1252(g) deprives

this Court of jurisdiction as Petitioner's request to stay his removal challenges the

execution of the Removal Order.  *See Rauda v. Jennings*, 55 F.4th 773 (9th Cir.

2022).  In *Rauda*, the IJ ordered the petitioner removed, and petitioner appealed

that order to the BIA, which rejected his appeal.  *See id*. at 776.  He sought review

with the Ninth Circuit, but that court denied his petition for review and affirmed

the IJ.  *See id*.  The petitioner then moved to reopen his case before the BIA and

also requested an emergency stay during the pendency of that decision.  *See id*.

The BIA denied the stay, and, because he couldn't directly appeal that order to the

---

[9]  The Court recognizes that Petitioner was in a "bureaucratic Catch-22" when his
counsel filed an appeal of the motion to reconsider before attempting to file the
motion to reopen.  *See Cui*, 13 F.4th at 1002 (Paez, J., concurring in part and
dissenting in part).  *Cui* says that Petitioner's counsel should have withdrawn the
appeal of the motion to reconsider and filed a motion to reopen, but it's
understandable why counsel would be reluctant to do so for fear of waiving his
jurisdictional argument.  In fact, for the Catch-22 that practitioners would find
themselves in, the Court considers Judge Paez's opinion more persuasive than the
majority in *Cui*, but the Court is nonetheless bound by precedent.  As an aside, the
Court also notes that *Cui* is inconsistent with 8 C.F.R. § 1241.1(e), which provides
that in absentia orders of removal are final upon entry.  To a certain extent that
makes more sense considering that people in Petitioner's position file motions to
stay removal with the IJ and the BIA.  If the orders weren't immediately final the
motions would be unnecessary.

Ninth Circuit, the petitioner instead sought habeas relief before the District Court, asking it to order the government not to remove him while the BIA ruled on his motion to reopen. He also filed a motion for a TRO in the District Court pending its ruling on his habeas petition. *See id*.

The District Court determined that it did not have jurisdiction over the petitioner's claims pursuant to Section 1252(g), and denied the TRO. *See id*. The petitioner appealed that decision, and the Ninth Circuit held that neither it nor the District Court had the power to order the stay, because the petitioner was "seek[ing] to enjoin the government from removing him—in other words, enjoin 'action by the Attorney General to . . . execute removal orders against [him].'" *Id*. at 777.

The petitioner in *Rauda* argued that Section 1252(g) was inapplicable for two reasons. First, he claimed he would lose his statutory right to file a motion to reopen if he were removed from the country. *See id*. Rejecting this, the Ninth Circuit explained that the petitioner was effectively trying to obtain judicial review of the BIA's denial of a motion to stay, which is a non-final immigration order. *See id*. And that in any event, the petitioner had extensive other avenues to challenge the denial of the stay and the motion to reopen, even if he were removed from the country in the interim:

> [The petitioner's] motion to reopen has already been filed, and is currently pending before the BIA. Once the BIA decides that

28

motion, [the petitioner] will be able to file a petition for [the Ninth Circuit] to review that final agency action—including review of the BIA's denial of his request for a stay or removal pending its decision. [The petitioner] has taken full advantage of his statutory rights and will continue to have access to the process guaranteed to him under the statute even if he is removed.

*Id*. at 777 (citation omitted).

Even more pertinent to the instant case, the petitioner in *Rauda* attempted to avoid Section 1252(g) by arguing that he was not challenging the discretionary authority to remove him but instead contesting the "allegedly unlawful decision to remove him *now*," during his proceedings before the BIA. *See id.* (internal quotation marks and alteration omitted). The Ninth Circuit, however, concluded that the Section 1252(g) bar on challenges to execution of removal orders "does not include any temporal caveats." *See id.* Put simply, "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it. Both are covered by the statute." *Id.* (quoting *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020)). The Ninth Circuit continued, "[n]o matter how [the petitioner] frames it, his challenge is to the Attorney General's exercise of discretion to execute [his] removal order, which we have no jurisdiction to review." *Id*. at 778.

Likewise, here, Petitioner asks the Court to do what it doesn't have the power to do: he asks the Court to stay his removal pending the BIA's decisions. But as his Removal Order is already final, he in effect, is challenging *when* the

29

order may be executed.  *Cf. Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025) (finding jurisdiction in part because the petitioner did "not challenge ICE's discretionary authority to decide 'when' or 'whether' to execute a removal order.").  While the Court recognizes that circumstances in *Rauda* were slightly different, in that the petitioner had already challenged his removal order through the BIA and Ninth Circuit via petition for review, that doesn't change the fact here that, based on *Cui*, Petitioner's in absentia Removal Order is final.  The Court thus concludes that it lacks jurisdiction to order a stay of removal.

**D.    Request for Order Reversing IJ's Decision to Deny the I-751 Waiver Petition**

Petitioner repeats ad nauseum that the IJ lacked jurisdiction over the I-751 petitions and thereby had no authority to enter the Removal Order.  *See e.g.*, ECF No. 1 at 36; ECF No. 36 at 7.  In doing so, Petitioner is really asking this Court to conclude that the order of removal was wrongly entered—which is something this Court cannot do.  As stated above, Section 1252(a)(5) plainly states that "the sole and exclusive means for judicial review of an order of removal" is "a petition for review filed with an appropriate court of appeals."  *See also Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) ("The language of the statute is clear.  The exclusive means to challenge an order of removal is the petition for review process.").  This Court has no jurisdiction to review the Removal Order.

Petitioner contends that his challenge to the IJ's decision amount to an attack on the IJ's *authority* to issue the Removal Order despite the pendency (at that time) of his I-751 waiver petition, and so is reviewable by this Court.  *See* ECF No. 18 at 4–6.  He particularly cites to *Madu v. U.S. Attorney General*, 470 F.3d 1362 (11th Cir. 2006), where the Eleventh Circuit determined that a "petitioner's assertion that he is not subject to an order of removal is distinct from a petitioner's challenge to a removal order."  *Id*. at 1363.  But *Madu* is easily distinguishable:  there, the petitioner challenged the actual *existence* of an order of removal, and "whether there [was] a removal order at all, which . . . is a different question than whether an extant removal order is lawful."  *Id*. at 1367 (citation omitted).  Here, Petitioner raises a *legal* challenge to the removal order—that the IJ didn't have the lawful authority to issue the Removal Order.  *Madu* in fact supports the Court's conclusion that it does not have the jurisdiction to reverse the Removal Order, even on legal grounds.  *See id.* (noting that the petitioner was not seeking review of a removal order).

No matter how Petitioner couches his argument, his claim that the IJ lacked jurisdiction is not "independent" of any challenge to the Removal Order.  *See*

*Martinez*, 704 F.3d at 622–23.[10]  One need only look at "the substance of the relief" that Petitioner is seeking to determine that his challenge is "inextricably linked" to the Removal Order.  *See id.* (citations omitted).  In the most glaring example, Petitioner asks the Court to enter a declaratory judgment that "the IJ's order of removal was inappropriate."  *See* ECF No. 1 at 36.  More generally, it's clear that he seeks an order from this Court undercutting the basis of the Removal Order.  As such, the Court concludes it lacks jurisdiction to determine whether the IJ had the authority to enter the Removal Order.

### E.    Motion to Enjoin Respondents from Transferring Petitioner to Another Facility

Petitioner also asks the Court to order Respondents not to transfer him to another detention facility while his case is pending before the BIA.  He proffers no statutory nor other legal authority for the relief he seeks and has therefore failed to carry his burden.

---

[10]  *Martinez* also forecloses Petitioner's attempt to vacate the Removal Order via the Administrative Procedure Act.  *Martinez*, 704 F.3d at 622 ("We join the Second and Seventh Circuits in holding that 8 U.S.C. § 1252(a)(5) prohibits Administrative Procedure Act claims that indirectly challenge a removal order."); ECF No. 35 at 2–3 (citing APA).  Similarly, Petitioner's reliance on Federal Rule of Civil Procedure 60(b)(4) in his Motion to Vacate reveals a fundamental misunderstanding of the rules and of federal court practice in general.  Rule 60(b) is a mechanism by which a district court may relieve the parties from a judgment *it* entered, or in some limited scenarios when a judgment is registered in the district court.  *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 251–54 (3d Cir. 2008).

**F.      Detention**

Petitioner's challenge to his detention is extremely vague but appears based either on the validity of the Removal Order or general concepts of due process. *See generally* ECF No. 1 at 33–34.  In other words, he does not argue that he has been detained for too long, *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1198–1202 (9th Cir. 2022) (describing challenges to prolonged detention), or that he has been misclassified and subject to mandatory detention, *see, e.g.*, *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1304 (W.D. Wash. 2025), or some other challenge to his detention separate from his removal.  As far as the Court can tell, Petitioner's challenge to his detention is thus inseparable from his attack on the Removal Order.  *See, e.g.*, ECF No. 1 at 2–3, 36.  His Writ Petition, then, seeks "[j]udicial review of . . . questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien form the United States[.]"  8 U.S.C. § 1252(b)(9).  And § 1252(b)(9)'s jurisdictional strictures are unaffected by habeas corpus law.  *See id.* ("no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28…").  Thus, writs of habeas corpus are not a mechanism to usurp the channeling provisions of § 1252, which means the Court cannot grant Petitioner the writ he seeks because it doesn't have the power to do so.  Further, interpreting §

33

1252(b)(9) as the Court has here avoids any concerns about inconsistent rulings that may arise if there was concurrent jurisdiction between this Court and the BIA.

To the extent Petitioner alleges some violation of due process separate from his challenge to the Removal Order, the Court concludes he has failed to state a claim. Petitioner does not dispute that he is detained subject to 8 U.S.C. § 1231. *See* ECF No. 34 at 20; ECF No. 34-1 ¶ 37. The Supreme Court has held that detention for up to six months pending execution of a removal order is presumptively constitutional. *See Zadvydas v. Davis*, 533 U.S. 678, 702 (2001).

## IV.   CONCLUSION

For the foregoing reasons, the Court DISMISSES the Writ Petition without prejudice for lack of jurisdiction. The Court thus denies the Second TRO Motion and Motion to Vacate as moot. This case is dismissed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, March 24, 2026.



Jill A. Otake
United States District Judge

CIV. NO. 26-00053 JAO-WRP, *Mazeliah v. Smith, et al.*; Order Dismissing Emergency Petition for Writ of Habeas Corpus